FILED
JAN 3 1 2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 13 CR 105 |
| vs. | ) | |
| | ) | Violations: Title 18, United States Code, Sections 1343 and 2 |
| MATTHEW OKUSANYA, and CHINYERE ALEX OGOKE | ) ) | |

JUDGE CONLON
MAGISTRATE JUDGE ROWLAND

## COUNT ONE

The SPECIAL JANUARY 2012 GRAND JURY charges:

1. At times material to this indictment:

   a. Company A owned units in a building located at 3351 and 3357 West Ohio, Chicago, Illinois. The building had two entrances. One entrance was designated "3351 West Ohio" and the other as "3357 West Ohio." Company A owed money to Diamond Bank and to Company B for its acquisition of the 3351-3357 West Ohio building.

   b. Defendant MATTHEW OKUSANYA and Olanrewaju Okulaja were associated with an entity known as Mattre Developers LLC and worked together in real estate transactions.

   c. Defendant CHINYERE ALEX OGOKE was an attorney licensed to practice law in Illinois.

   d. CitiMortgage, a wholly-owned subsidiary of Citigroup, was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation.

   e. CitiMortgage, Fifth Third Bank, Homecomings Financial Network, Wells Fargo Bank, N.A., Fifth Third Mortgage Company, Washington Mutual Bank FA, Countrywide Home Loans, Inc. ("Countrywide"), Bank United FS, and others, were lenders that made loans

secured by mortgages.

  e. Lenders required applicants for mortgage loans to provide truthful information, including information about the sales price of the property and about the borrower's employment, income, financial condition, assets, liabilities, source of down payment, and intention to occupy the property, which information was material to the lenders' approval, terms, and funding of the loans.

  f. Lenders sold the mortgage loans to other lenders and institutions. Lenders disclosed that the mortgage loans could be sold and the likelihood that the mortgage loans would be sold. The information provided in loan applications and supporting documents, including the sales price of the property and the borrower's employment, income, assets, liabilities, source of down payment, and intention to occupy the property purchased, was material to the successors' decision to purchase the mortgage loans.

  g. The Federal National Mortgage Association, also known as Fannie Mae, and the Federal Home Loan Mortgage Corporation, also known as Freddie Mac, are government-sponsored enterprises chartered by Congress with a mission to provide liquidity, stability, and affordability to the United States housing and mortgage markets. As part of this mission, Fannie Mae and Freddie Mac purchase residential mortgages in the United States secondary market. Fannie Mae and Freddie Mac assist lenders by purchasing the loans they originate, enabling the lenders to replenish their funds to finance additional single family homes. The information provided in loan applications and supporting documents, including the sales price of the property and the borrower's employment, income, assets, liabilities, source of down payment, and intention to occupy the property purchased, was material to the decision by Fannie Mae and Freddie Mac to purchase the

mortgage loans.

2. Beginning in or about November 2007, and continuing until in or about November 2008, in the Northern District of Illinois, Eastern Division, and elsewhere,

MATTHEW OKUSANYA, and
CHINYERE ALEX OGOKE,

defendants herein, along with others known and unknown to the Grand Jury, devised and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme affected financial institutions, and is further described below.

3. It was part of the scheme that defendants MATTHEW OKUSANYA and CHINYERE ALEX OGOKE fraudulently obtained a total of at least approximately $3,170,231.14 in mortgage loans proceeds from lenders and, for the purpose of executing the scheme, caused interstate wire transmissions to fund these mortgage loans.

4. It was further part of the scheme that defendant OKUSANYA and Okulaja agreed with the owner of Company A to sell the units in the 3351-3357 West Ohio building. Under the agreement, the mortgage loan proceeds received from the sale of the first units would be used to pay off Company A's indebtedness to Diamond Bank and Company B. Thereafter, once Company A's indebtedness was paid off, OKUSANYA and Okulaja planned to direct the mortgage proceeds to themselves.

5. It was further part of the scheme that defendant OGOKE, who was aware of the agreement with Company A, prepared paperwork for an Illinois corporation entitled "World Development I, Inc." ("WDI") as the means for defendant OKUSANYA and Okulaja to acquire

proceeds from the sale of units in the 3351-3357 West Ohio building. The name "World Development I, Inc." was a close variation of Company A's name.

6. It was further part of the scheme that Company A issued a mortgage to WDI for the 3351-3357 West Ohio building even though, as defendants OKUSANYA and OGOKE well knew, Company A did not hold clear title to the building as a result of the indebtedness to Diamond Bank and Company B.

7. It was further a part of the scheme that defendant OKUSANYA recruited, or used other individuals to recruit, buyers for the units in the 3351-3357 West Ohio building. The buyers were told that they would not have to provide any of their own money; that they would receive cash back at the closing; that others would make the mortgage payments on their behalf; and that the property would only be in their names for a short time before it was sold.

8. It was further part of the scheme that Okulaja obtained from an individual false employment documentation in the names of the nominee buyers for use in fraudulent mortgage loan applications.

9. It was further part of the scheme that defendants OKUSANYA and OGOKE submitted and caused to be submitted to loan officers and lenders fraudulent mortgage loan applications on behalf of the nominee buyers, well knowing that the loan applications contained material false statements concerning the nominee buyer's employment, income, assets, liabilities, and intention to occupy the residence being purchased.

10. It was further part of the scheme that, when the loan for which the nominee buyer applied required a down payment, or when a lender required the nominee buyer to make a down payment, defendant OKUSANYA and Okulaja provided funds which were falsely represented to the

lender as having been provided by the nominee buyer.

11. It was further part of the scheme that, when the units in 3351-3357 West Ohio were sold, as defendants OKUSANYA and OGOKE well knew, the settlement statements falsely listed WDI as the seller.

12. It was further part of the scheme that, in connection with approximately the first nine sales of units in the 3351-3357 West Ohio building, Diamond Bank and Company B were listed on the settlement statements as the holders of first or second mortgages on the units and, accordingly, received payouts from the mortgage funds. The remaining mortgage loan funds were given to WDI as the "seller" of the units.

13. It was further part of the scheme that, after the approximately first nine units in the 3351-3357 West Ohio building were sold, the majority of the mortgage loan proceeds were given to WDI as the "seller" of the units.

14. It was further part of the scheme that defendant OKUSANYA and OGOKE attended closings of properties purchased with fraudulently obtained mortgage loans to ensure they received their share of the fraudulently obtained mortgage loan proceeds.

15. It was further part of the scheme that, between on or about January 11, 2008 and on or about February 4, 2008, KB, a nominee buyer, acquired Units 2W, 1W, and 3W in 3351 West Ohio and Unit 2W in 3357 West Ohio, by obtaining mortgage loans through false statements made to a lender.

16. It was further part of the scheme that, on or about February 4, 2008, KB, a nominee buyer, purchased Unit 3W in the 3351 West Ohio building with a mortgage loan obtained from Countrywide through false statements made to Countrywide. The loan was later purchased by

Fannie Mae and then taken back by Bank of America, the successor entity to Countrywide.

17. It was further part of the scheme that, between on or about January 23, 2008, and on or about February 22, 2008, WB, a nominee buyer, acquired Units 1S and 2S in 3357 West Ohio, by obtaining mortgage loans through false statements made to the lender.

18. It was further part of the scheme that, on or about February 22, 2008, WB, a nominee buyer, purchased Unit 2S in the 3357 West Ohio building with a mortgage loan obtained from CitiMortgage through false statements made to CitiMortgage. The loan was later purchased by Fannie Mae and then ultimately reacquired by CitiMortgage.

19. It was further part of the scheme that defendant OKUSANYA, with the assistance of defendant OGOKE as the seller's lawyer at the closings, caused WDI to acquire Units 1E, 1W, 2E, 2W, 3E, and 3W in 3351 West Ohio and Units 1S, 2S, 2W, 3S, and 3E in 3357 West Ohio in transactions funded by fraudulently obtained mortgage loans.

20. It was further part of the scheme that defendants OKUSANYA and OGOKE distributed proceeds of fraudulently obtained mortgage loans to nominee buyers or their representatives, and others who had assisted in fraudulently obtaining the mortgage loans, without disclosing such payments to the lender that funded the mortgage loans.

21. It was further part of the scheme that defendants OKUSANYA and OGOKE did misrepresent, conceal and hide, and cause to be misrepresented, concealed and hidden, acts done in furtherance of the scheme and the purpose of those acts, beyond those acts of concealment set forth above.

22.     On or about February 4, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere,

> MATTHEW OKUSANYA, and
> CHINYERE ALEX OGOKE,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from New York, New York, to Chicago, Illinois, certain signs, signals and sounds, namely, an interstate wire transfer of approximately $291,829.23 which funds were the proceeds of a mortgage loan made by Countrywide for the purchase of Unit 3W at 3351 West Ohio, Chicago, Illinois;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1. The allegations of paragraphs 1 through 21 of Count One are realleged and incorporated as though fully set forth herein.

2. On or about February 22, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere,

>MATTHEW OKUSANYA, and
>CHINYERE ALEX OGOKE,

defendants herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of a wire communication in interstate commerce from Missouri to Illinois, certain signs, signals and sounds, namely, an interstate wire transfer of approximately $291,168.62, which funds were the proceeds of a mortgage loan made by CitiMortgage, Inc. for the purchase of Unit 2S at 3357 West Ohio, Chicago, Illinois;

In violation of Title 18, United States Code, Sections 1343 and 2.

## **FORFEITURE ALLEGATION**

The SPECIAL JANUARY 2012 GRAND JURY further alleges:

1. The allegations of Counts 1 and 2 of this Indictment are realleged and incorporated by reference as if fully restated herein for the purpose of alleging that certain property is subject to forfeiture to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2. As a result of their violations of Title 18, United States Code, Section 1343, as alleged in the foregoing Indictment,

> MATTHEW OKUSANYA, and
> CHINYERE ALEX OGOKE,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all right, title, and interest they may have in any property, real and personal, involved in the wire fraud offenses, and traceable to the property involved in the offenses, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

3. The interests of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), include the sum of approximately $3,170,231.14.

4. By virtue of the commission of the offenses charged in Counts 1 and 2 of this Indictment by the defendants, all right, title or interest that defendants have in the above-described property is vested in the United States and hereby forfeit pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

5.  If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants:

   a.  cannot be located upon the exercise of due diligence;

   b.  has been transferred to, sold to, or deposited with a third person;

   c.  has been placed beyond the jurisdiction of the Court;

   d.  has been substantially diminished in value;

   e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY