# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | No. 13 CR 105-2 |
| | ) | |
| Chinyere Alex Ogoke, | ) | Judge Ronald A. Guzmán |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court finds Attorney Michael I. Leonard in contempt of court and imposes a fine of $300.00 to be paid to the Clerk of the Court no later than October 1, 2015.

# STATEMENT

Defense counsel Michael I. Leonard was ordered to appear before this Court and show cause, if any he has, why this Court should not hold him in criminal contempt for directly disobeying this Court's order during the course of his closing argument in the above-captioned case ("Ogoke trial") in violation of 18 USC § 401(1) - (3). The order notified the respondent that the proceedings would be as in cases concerning petty offenses. A hearing was subsequently held wherein the Court took judicial notice of the record and proceedings in the Ogoke trial. Mr. Leonard was represented by counsel, Matthew Madden, who was afforded an opportunity to present evidence and argument in any form or manner he wished. Mr. Leonard testified on his own behalf as did his co-counsel in the Ogoke trial, Mr. Robert Joseph Lane Robertson. Mr. Leonard also submitted in evidence approximately 24 letters from other members of the legal profession as evidence of his character in general, and specifically as evidence that he would not

intentionally violate a court order.

Title 18 U.S.C. § 401 provides that a court of the United States shall have power to punish for contempt by fine or imprisonment:

> **(1)** Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>
> **(2)** Misbehavior of any of its officers in their official transactions;
>
> **(3)** Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401. On July 27, 2015, and later amended on August 5, 2015, this Court issued a rule to show cause why Mr. Leonard should not be held in contempt of court for making reference, during closing argument, to a witness the government had not called. (Dkt. ## 176, 184.) Mr. Leonard's conduct appears to fit subsections (1) and (3) above.[1] His behavior occurred in the very presence of the Court and threatened, by improperly attempting to influence the jury, to obstruct the administration of justice. In addition, his misbehavior constituted a direct and willful disobedience to a lawful court order. In *U.S. v. Lowery*, 733 F.2d 441 (7th Cir. 1984), the Seventh Circuit articulated clearly why such conduct is unacceptable:

> If a defense lawyer, knowing as he must that a judgment of acquittal cannot be set aside no matter how egregiously the jury disregarded the law or the facts and that a judge will be reluctant to declare a mistrial toward the end of a protracted criminal trial, deliberately exceeds the proper bounds of cross-examination in an effort to obtain his client's acquittal, he is violating the ground rules of the adversary struggle, and therefore obstructing the administration of justice.

*Id.* at 445.

---

[1] Subsection (2) may apply as well. As court-appointed counsel, Mr. Leonard is arguably an officer of the court, and the misbehavior occurred in the discharge of his official duties as court-appointed counsel.

In the case at bar, the misconduct is even more egregious because it took place at a time when its improper impact would be most strongly felt by the jury--during closing arguments and just minutes before the jury retired to deliberate. His argument, urging the jury to draw an adverse inference from the prosecution's failure to call a witness, is contrary to both Seventh Circuit law and this Court's clear and direct order that no such argument was to be made. The intent, it is clear, was to leave a lasting impression that would improperly influence the jury's deliberations. This is precisely the conduct that the language in *Lowery* identified as an obstruction of the administration of justice.

Counsel relies upon the defense that his conduct, although clearly wrong, was unintentional. In essence, he contends that he simply forgot that such an argument was improper as well as contrary to the Court's clear pretrial ruling. The Court finds this argument incredible. There can be no doubt that the misconduct was intentional. First, Mr. Leonard's defense completely bypasses the salient fact that the argument he made was contrary to long-standing Seventh Circuit law. Absent a showing that a witness is, in practical terms at least, not available to him but is available to the government, defense counsel is not entitled to argue an adverse inference from the government's failure to call that witness. *See Oxman v. WLS-TV*, 12 F.3d 652, 661 (7th Cir. 1993); *United States v. Keplinger*, 776 F.2d 678, 772 (7th Cir. 1985); *Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.,* 719 F.2d 1335, 1353 (7th Cir. 1983). Notably, Mr. Leonard's counsel does not even attempt to argue that there was any showing that the witness in question, Mr. Okusanya, was available to the government but unavailable to him. That is likely because the record of the final pretrial conference reflects that both the government and Mr. Leonard, in response to the Court's inquiry, expressly agreed that there were no such

witnesses in this case. Thus, the argument was improper under current Seventh Circuit precedent and a pretrial ruling barring such conduct should not even be necessary. An attorney of Mr. Leonard's extensive federal criminal and civil trial experience would clearly know this. Not only has he been involved in a great many criminal trials in numerous venues, he has taught trial technique courses at major law firms and law schools.[2] Under such circumstances, his claim to have "forgotten" that the argument was improper is not credible.

Second, even if we were to assume that Mr. Leonard was not aware of this law before the Court's ruling, he certainly knew of it after the Court ruled. As the record clearly reflects, this very question was brought before the Court by the government in a motion *in limine* which was discussed at the pretrial conference. The government, anticipating what Mr. Leonard would ultimately do, filed a pretrial motion specifically to prevent any mention of a purported missing witness. The following discussion of the government's motion took place:

> THE COURT: Impropriety of argument about missing witnesses. Is there any missing witness issue in this case?
>
> MR. LEONARD: Well I think the only thing that would come up is the fact that each side could call somebody if they chose not to call somebody I don't think we have any -- there's any reason we couldn't comment on the fact that they didn't hear from them. There's nobody missing from a procedural perspective that I know of.
>
> THE COURT: Well, a comment about a witness not being called is not appropriate unless it's a witness that was only available to the other side. That's the way I understand the law. So if you're

---

[2] Mr. Leonard testified that he has litigated three to five hundred cases in state and federal court. He has been a member of the Federal Defender Panel since 2005 and has been appointed counsel in some 50 to 75 cases, of which eight have gone to trial, with three of those trials ending in acquittals. He has also tried approximately a dozen civil jury trials. Finally, he has trained attorneys in trial work while a partner at a private law firm, as an instructor in the federal bar training course, and as an adjunct instructor at Northwestern University Law School.

going to argue that the government failed to call a witness that would have been favorable to you, that's only allowed if the witness was not available to you. Is there any such situation in this case? Are there any witnesses the government has got in its back pocket that are not available to defense counsel?

    MS. MacARTHUR: No, Your Honor.

    THE COURT: Vice versa?

    MR. LEONARD: No. My understanding, Judge, was that if they -- and this is all hypothetical. But if they didn't call somebody, there's no reason why I couldn't say they didn't hear from them although they could certainly make the argument that Mr. Leonard could have called him if he wanted to.

    THE COURT: Yes and I think, frankly, that, if my recollection is correct, the law in this circuit is that that exchange shouldn't take place. Let's take a look.

    (Brief pause.)

    THE COURT: Well, I can't find it. I have a note written in here someplace but that's going to be my ruling. I will do some investigation on my own. If you have some law that you think is contrary to that, let me know.

    MR. LEONARD: Okay.

    THE COURT: And I'll reconsider.

(5/12/15 Pretrial Conf. Tr.)

As can be seen, in response to the government's motion, Mr. Leonard argued that he should be allowed to comment on a missing witness even without a showing of unavailability and that the government, in turn, could rebut the argument by pointing out that the defendant was equally capable of calling the witness in question. He is clearly familiar with this issue. Moreover, the type of argument he proposed would almost always favor the defendant. In a criminal case, the defense has the trump card in such an exchange because the jury is instructed

that the burden of proof is on the government and that the defendant is not required to present any evidence at all. Further, jurors are instructed that they are not allowed to draw any inference from the fact that the defendant did not testify or put on any evidence of his own. If the government were to reference, in rebuttal, the defendant's equal ability to call the witness, as Mr. Leonard suggested, the government treads dangerously close to violating the defendant's right to remain silent in the face of the government's accusations. The advantage in such a situation is clearly with the defense. As an experienced trial lawyer, Mr. Leonard was aware of this.

During the pretrial conference, the Court indicated its understanding that such an argument could not be made and ruled orally in favor of the government. Mr. Leonard was invited to submit any case law to the contrary and the Court indicated it would reconsider its ruling. He responded, "OK," thus indicating he heard the Court and understood the ruling. Shortly thereafter, having received no case law or any other submission from Mr. Leonard, the Court issued its written ruling on the missing witness motion. In that ruling, the Court expressly rejected Mr. Leonard's position, specifically barred counsel from making any such argument, and required him to petition the court if he believed that during the trial it had been shown that a particular witness was not sufficiently available to both sides so as to allow him to make such an argument. (Dkt. # 93.) In light of counsel's argument during the final pretrial conference, the Court's invitation to Mr. Leonard to submit case law if he disagreed, and the subsequent clear and unequivocal written order, Mr. Leonard's testimony that he did not recall the ruling and had no specific reason to is simply not credible.

Third, the manner in which the argument was made shows that it was not a spur-of-the-moment mistake. The argument was stretched out by first arguing what a central figure Mr.

Okusanya (the "missing" witness) was to the scheme to defraud. (Trial Tr., Dkt. # 184, 21-22.) Counsel made very clear the adverse inference he was urging the jury to make by pointing out that as the "grand schemer," Mr. Okusanya would be in a position to corroborate the defendant's part of the scheme if the defendant really had been involved. (*Id*. at 22.) Mr. Leonard concluded his argument by stating, "Not one word from Matthew Okusanya during the trial about Alex Ogoke. That's strange. . . . If the government had something from Okusanya to support the idea that this guy did it, you would have heard from the grand schemer, Mr. Okusanya." (*Id*. at 21-22.) Mr. Leonard intentionally and very forcefully disregarded the Court's order and thereby obstructed the administration of justice. There was nothing accidental or unintentional about this argument. It was well-thought out and effectively delivered.

Finally, there is evidence in the trial transcript that contradicts Mr. Leonard's testimony at the show cause hearing. Mr. Leonard testified that the missing witness argument was only a part of his general preparation for closing arguments as he bounced ideas back and forth with his co-counsel. But the missing witness inference was part of Mr. Leonard's trial strategy, if not from the beginning when he argued that he should be allowed to make such an argument, certainly long before he sat down for final preparation of his closing argument. Specifically, in his cross examination of Special Agent Christopher Lane of the Federal Housing Financing Agency – Office of the Inspector General, Mr. Leonard went to great pains to establish both Mr. Okusanya's importance to the entire case and his easy availability to the government.

> Q. Just one thing. The guy we were talking about a bunch, this Okusanya guy, you've talked to him a whole bunch of times, haven't you?
>
> A. I've spoken to Matthew Okusanya, yes.

Q. Excuse me?

A. I have spoken to Matthew Okusanya.

Q. A bunch of times, right?

A. A few. I don't know how many.

Q. More than ten?

A. No.

Q. How many do you think -- how many times do you think you talked to this important character, Mr. Okusanya?

Ms. MacARTHUR: Objection, your Honor, to the characterization and to the relevance.

THE COURT: I will allow him to ask the question. It's cross-examination. I'll allow some characterization.

BY MR. LEONARD:

Q. This guy you've been talking about all day, Okusanya, the guy that got hundreds of thousands of dollars from these transactions, how many times did you sit down and talk to him?

A. I would estimate around five or six.

Q. Five or six?

Q. And, in fact, over the last 30 days you've talked to him a couple times, haven't you?

A. In the last 30 days I don't believe I have.

Q. When was the last time you sat down with Mr. Okusanya and had a chat with him?

A. I would have to check my records.

Q. Just –

A. Within the last 60 days.

> Q. Okay. I don't want to hold you to a specific date but
>
> A. Okay.
>
> Q. -- the last 60 days or so, right?
>
> A. Yes.

Through his questioning, Mr. Leonard informed the jury that Mr. Okusanya was both a very important actor/witness in the scheme to defraud and that he was easily available to the government should it wish to call him to testify. Counsel went out of his way to emphasize during this cross examination–long before closing arguments–that Mr. Okusanya was an "important character" with whom the government's agent had met repeatedly. One would have to work hard to lay a better foundation for a missing witness closing argument than this cross examination. This was no accident or mistake.

In addition to his own testimony and that of his co-counsel, Mr. Leonard also submitted approximately 24 letters from attorneys as proof his good character. Most, if not all, of the authors of these letters opined that Mr. Leonard would not intentionally violate a court order. These colleagues emphasize that if a violation occurred, it must have been unintentional. But the authors of these letters are not familiar with the proceedings in this case. Further, these letters appear to misconstrue the relevant meaning of "intent" under § 401. As the Seventh Circuit explained, "the requisite intent is better defined as a volitional act done by one who knows or should reasonably be aware" that his conduct is wrongful. *United States v. Seale*, 461 F.2d 345, 368 (7th Cir. 1972). And given the foregoing discussion, no one could credibly argue that Mr. Leonard was not, or should not have been, "reasonably aware" of this Court's order and the clear case law governing the conduct at issue.

At his show cause hearing, Mr. Leonard's counsel cited *United States v. Pickering*, -- F.3d --, 14-cv-3730, 2015 WL 4480854 (7th Cir. July 23, 2015), in support of his position. In *Pickering*, the Seventh Circuit considered whether a finding of willful contempt is precluded where the defendant claimed to have simply forgotten about the jury summons she was issued. The Seventh Circuit ultimately found in the defendant's favor, explaining that there was no proof beyond a reasonable doubt that the defendant did not forget the summons, as she had testified. *Id.* at *2. But there are myriad differences between *Pickering* and the instant case.

Primarily, the defendant in *Pickering*, a layperson who failed to respond to a jury summons, claimed she was dealing with a complicated pregnancy and a seriously ill mother who needed to be driven 89 miles across the state multiple times per week for doctor visits. *Id. at* *1. What the *Pickering* opinion makes clear is that the district court failed to articulate any facts or reasoning that would support a finding that Ms. Pickering's testimony that she just plain forgot was not believable. Nor was there any other fact in the record of the proceedings upon which a finding of willfulness could be based. In the instant case, the Court has taken judicial notice of the record of the proceedings and has itself observed all of the facts upon which it bases its finding that Mr. Leonard's testimony that he forgot is not believable.

Whether the defendant in *Pickering* was forgetful under those circumstances is properly the subject of debate given her testimony and the total lack of any other evidence for the court in that case to consider. Whether Mr. Leonard was merely forgetful in the case at bar, however, is not. He is a seasoned attorney with extensive trial and litigation experience who crafted a trial strategy and closing argument in direct conflict with a court order and controlling case law. He was intimately involved in the processes surrounding that issuance of the order. He

At his show cause hearing, Mr. Leonard's counsel cited *United States v. Pickering*, -- F.3d --, 14-cv-3730, 2015 WL 4480854 (7th Cir. July 23, 2015), in support of his position. In *Pickering*, the Seventh Circuit considered whether a finding of willful contempt is precluded where the defendant claimed to have simply forgotten about the jury summons she was issued. The Seventh Circuit ultimately found in the defendant's favor, explaining that there was no proof beyond a reasonable doubt that the defendant did not forget the summons, as she had testified. *Id.* at *2. But there are myriad differences between *Pickering* and the instant case.

Primarily, the defendant in *Pickering*, a layperson who failed to respond to a jury summons, claimed she was dealing with a complicated pregnancy and a seriously ill mother who needed to be driven 89 miles across the state multiple times per week for doctor visits. *Id. at* *1. What the *Pickering* opinion makes clear is that the district court failed to articulate any facts or reasoning that would support a finding that Ms. Pickering's testimony that she just plain forgot was not believable. Nor was there any other fact in the record of the proceedings upon which a finding of willfulness could be based. In the instant case, the Court has taken judicial notice of the record of the proceedings and has itself observed all of the facts upon which it bases its finding that Mr. Leonard's testimony that he forgot is not believable.

Whether the defendant in *Pickering* was forgetful under those circumstances is properly the subject of debate given her testimony and the total lack of any other evidence for the court in that case to consider. Whether Mr. Leonard was merely forgetful in the case at bar, however, is not. He is a seasoned attorney with extensive trial and litigation experience who crafted a trial strategy and closing argument in direct conflict with a court order and controlling case law. He was intimately involved in the processes surrounding that issuance of the order. He

acknowledged the Court's oral order at the time it was made, admitted that he read the written order when it was issued, and executed a cross-examination which enhanced the persuasive impact of his subsequent improper argument. The Court is therefore convinced beyond a reasonable doubt that Mr. Leonard knew of, and intentionally violated, this Court's order.

In his closing argument at the hearing on the rule to show cause, defense counsel emphasized that Mr. Leonard's testimony at the hearing stands unrebutted. Not so. As pointed out above, the chronology of events disclosed by the record of the case, Mr. Leonard's own words in his pretrial arguments to the Court, Mr. Leonard's choices and manner of cross-examination and his well-crafted and well-delivered closing argument all serve to contradict and rebut his own self-serving testimony at the hearing.

But even were we to conclude that Mr. Leonard's conduct was not motivated by a specific intent to violate the Court's order, it would still be reckless and therefore support a finding of contempt. *See United States v. Mottweiler*, 82 F.3d 769, 771 (7th Cir. 1996) (explaining that the "willfulness" standard for contempt contemplates both intentional and reckless conduct; that is, whether a defendant knew of and disregarded "a substantial risk that the prohibited events will come to pass"). At the hearing, Mr. Leonard testified that while preparing for trial, he declined to review the government's motions *in limine*, this Court's orders, or the pretrial conference transcript, any of which would have been sufficient to put him on notice of the impropriety of his closing argument. Such conduct, if true, is -- to say the least – reckless. It would be strange indeed if an attorney's failure to review the Court's evidentiary rulings before trial was considered an adequate excuse for violating those same orders in a manner that obstructed justice.

This Court is familiar with mistakes, lapses and unintentional slips of the tongue in the heat of a hotly contested trial. Indeed there were several such lapses by Mr. Leonard in this trial, which need not be detailed because they are irrelevant to this proceeding. But what counsel did in his closing argument is best described by the Seventh Circuit's statement in *Lowery*, as noted above. *Lowery*, 733 F.2d at 446 ("If a defense lawyer, knowing as he must that a judgment of acquittal cannot be set aside … deliberately exceeds the proper bounds of cross-examination in an effort to obtain his client's acquittal, he is violating the ground rules of the adversary struggle, and therefore obstructing the administration of justice"). Counsel exceeded the proper bounds of closing argument in an effort to obtain his client's acquittal. Had the government done the same in obtaining a conviction, it would have been reversible error and Mr. Leonard would be the first to so proclaim. But as the Seventh Circuit points out, there is no such thing as reversible error in a not guilty verdict.

Pursuant to 18 U.S.C. §§ 401(1) and (3), the respondent, Michael I. Leonard, is hereby adjudged in criminal contempt of court and ordered to pay a fine of $300.00 payable to the Clerk of Court no later than the close of business on October 1, 2015.

**Date:** September 17, 2015

-----------------------------------------
**RONALD A. GUZMÁN**
**United States District Judge**