# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 13 CR 105-2 |
| CHINYERE ALEX OGOKE, Defendant. | Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the motion to vacate the Court's order of September 17, 2015 [229] is denied.

## STATEMENT

Before the Court is Michael Leonard's motion to vacate the Court's September 17, 2015 order finding him in contempt of court and imposing a fine of $300.00. Mr. Leonard argues that: (1) the Court committed reversible procedural error in following the summary procedures outlined in Federal Rule of Criminal Procedure 42(b) because it did not act immediately in imposing its contempt finding and did not comply with all of the requirements of Rule 42(a); (2) the Court committed reversible error by giving insufficient notice as to what specific conduct violated the particular provisions of 18 U.S.C. § 401, and by taking judicial notice of the entire record without giving specific notice regarding what evidence it intended to use against him in its ruling; and (3) the evidence was insufficient as a matter of law to prove beyond a reasonable doubt that Mr. Leonard violated 18 U.S.C. §§ 401(1) or (3).

Under Rule 42(b) of the Federal Rules of Criminal Procedure, a criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the

contempt and that it was committed in the actual presence of the court.[1] The Seventh Circuit has, however, added a further requirement that such a summary proceeding may only be held if, in addition to the requirements of Rule 42(b), "there is a 'compelling reason for an immediate remedy' or time is of the essence." *United States v. Lowery*, 733 F.2d 441, 446 (7th Cir. 1984) (citations and internal quotation marks omitted).

In explaining how best to understand this additional consideration to the requirements of Rule 42(b) (previously subdivision (a)), the *Lowery* court referenced the formula set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), for determining how many procedural safeguards are required in particular classes of cases in order to satisfy the requirements of due process. The formula, the *Lowery* court stated, "requires a comparison of the benefits of a fuller proceeding in avoiding errors (benefits that are a function of the magnitude as well as probability of the errors that would be avoided) with the costs of that [fuller] procedure." *Lowery*, 733 F.2d at 447. The *Lowery* court goes on to explain that because there is no statutory limit to the amount of the fine that can be imposed for contempt under Rule 42(b), "there is no reason to believe that this formula will yield the same conclusion in every case where a contempt is committed in the presence of the court." *Id*.

In the case at bar, the Court announced in the rule to show cause that the proceedings would be "as in cases concerning petty offenses," and the fine the Court actually imposed after a

---

[1] As an initial matter, Mr. Leonard complains that the Court did not certify that the contempt occurred in its presence. Not so, as the Amended Rule to Show Cause describes that the conduct being alleged is Mr. Leonard's invocation of a forbidden inference during his closing argument in open court. Furthermore, attached as an exhibit to the amended rule to show cause is the transcript of Mr. Leonard's closing argument, which clearly indicates that the Court witnessed the contemptuous conduct. The conduct for which Mr. Leonard was found in contempt occurred during the course of closing arguments in full view of the court and the jury and he was clearly apprised of that by the Court's amended rule to show cause.

finding of contempt was $300.00. In 1984, the *Lowery* court held that a fine of $300.00 would be considered as close to the bottom of the severity range. *See id*. By today's standards, it must be even lower - if possible - than that. To be clear then, the issue before the Court is the appropriate amount of process due in a petty offense proceeding where the conduct of the accused occurred wholly in the presence of the Court and the fine imposed was $300.00.

Mr. Leonard mentions the possible collateral consequences, *i.e*., the likelihood that an attorney found in contempt of court would face disciplinary proceedings by the state, as an additional circumstance to consider. In that regard, the *Lowery* court noted that the smaller the fine the less likely such collateral sanctions would be imposed at all. *See id*. The likelihood that Mr. Leonard will actually face collateral sanctions is very small indeed, and if any sanction were imposed, it is unlikely to be severe.[2] In short, we are at the bottom of the scale in terms of the

---

[2] In his memorandum, Mr. Leonard makes much of the fact that he has received a letter of inquiry from the Illinois Attorney Registration and Disciplinary Commission ("ARDC"). This appears to be a form letter advising him that the ARDC has received a complaint about his conduct and is duty bound to consider it. At the time it was sent, the letter required nothing more than a response from Mr. Leonard with his version of the occurrence in order for the Commission to determine if any further action was warranted. Because Mr. Leonard's response was due within fourteen days of having received the inquiry, which is dated October 6, 2015 (Dkt. # 230-2), it is possible that the matter has already been closed by the ARDC. *See* ARDC Rule 54 ("When the Administrator concludes that there is insufficient evidence to establish that the respondent has engaged in misconduct or to establish an allegation of unauthorized practice of law, the Administrator shall close the investigation."). If the ARDC matter is indeed closed, the Court must assume that it decided not to proceed with the investigation given the lack of any notification to this Court by Mr. Leonard of further proceedings. Even if the investigation is not closed (or is reopened), an implication that Mr. Leonard will actually face some sort of sanction, especially a significant one, is unsupported. Furthermore, in any proceeding before the ARDC, Mr. Leonard would have the benefit of an extensive array of procedural safeguards, which essentially track the Illinois Code of Civil Procedure and the Rules of the Illinois Supreme Court. Finally, the Court notes that Mr. Leonard's conduct is subject to ARDC investigation and disciplinary proceedings without any regard to whether this Court has found him in contempt or not. The ARDC Inquiry Board is empowered to conduct investigations and file a complaint with the ARDC Hearing Board on its own initiative. It is neither dependent upon, nor does it require,

magnitude of the impact of any possible error. Let us now consider the likelihood of such an error occurring given the process that Mr. Leonard was afforded.

In judging the probability that possible errors would be avoided by a fuller proceeding, the Court notes that the entirety of the evidence that it considered, other than the evidence presented by the contemnor himself, consisted of the uncontested record of the proceedings. The only facts the Court considered were recorded in the trial transcript as were all of the relevant circumstances. Furthermore, both Mr. Leonard and his co-counsel were present during the relevant event as well as the entirety of the trial and the applicable pretrial proceedings. It is hard to see how the lack of the appointment of a special prosecutor to present the record of the proceedings to the Court would enhance the fact-finding process in this case. The facts are straightforward and indisputable. Thus, in the balancing of interests required by *Lowery*, the likelihood of an error in the fact-finding process introduced by the lack of an independent prosecutor in this summary proceeding is insignificant.

Furthermore, in spite of Mr. Leonard's arguments to the contrary, the employment of a summary procedure allowed him advantages he would clearly not have otherwise enjoyed. His testimony and that of his co-counsel were entirely unchallenged, and there was no cross-examination. In addition, Mr. Leonard was allowed to present the character testimony of approximately twenty witnesses by hearsay letters, thus avoiding the expense and uncertainty of requiring them to appear in court and give testimony under oath. In any but a summary

---

a citation or finding of contempt by this or any other court. If Mr. Leonard faces such discipline, it will be as a result of his own misconduct and pursuant to an independent determination by the state. *See In the Matter of Rufus Cook*, 49 F.3d 263, 266 (7th Cir. 1995) ("Illinois is free to conclude that defrauding a judge and bilking one's clients does not diminish an attorney's standing at its bar" despite a finding of contempt by a court).

proceeding, such testimony would have been subject to cross-examination as well, and could have taken days, if not weeks, to present. *Lowery* requires the court to weigh the cost of a "fuller procedure" against the benefits of avoiding errors on a case-by-case basis. It is clear that the cost of proceeding with a full-blown evidentiary hearing and a special prosecutor in this case in which the conduct at issue occurred in the presence of the Court and was fully recorded by a court reporter clearly outweighs any likelihood of an error in the fact-finding process.

Mr. Leonard also complains that he was not properly advised of the evidence the Court would consider. At one point he argues that he was prejudiced by the Court's consideration of the very letters he submitted on his own behalf. Apparently he believes that the Court should have disclosed to him that, as the trier of fact, it would determine how much weight to give to any evidence he presented and draw its own reasonable inferences from that evidence. But when has it ever been otherwise? What Mr. Leonard is really challenging is that the Court came to a conclusion different from what he expected and hoped for. No amount of process will shield a defendant from this. In addition, the Court's use of Mr. Leonard's character references served to point out an apparent misconception in Mr. Leonard's understanding of the intent requirement, which is a point of law, not some unexpected conclusion of fact by which he was somehow surprised and prejudiced.

Mr. Leonard came to the contempt hearing extremely well-prepared and represented by experienced veteran trial counsel, and presented a single defense to the charge of contempt -- that his misconduct was not intentional. In support of his defense, he submitted approximately twenty character letters of reference, each stating that in the author's opinion, Mr. Leonard would never intentionally violate a court order. He also presented his own testimony and that of

his co-counsel regarding the manner in which he prepared his closing argument.  In short, he argues that his misconduct was not intentional because he simply forgot that the Court had barred him from making such an argument, and that it was only an innocent mistake.  His attorney followed up by arguing recent Seventh Circuit caselaw, *United States of America v. Pickering*, 794 F.3d 802 (7th Cir. 2015), for the proposition that intent is an element of the offense of contempt of court, and specifically that any determination by a court as to the requisite state of mind of an accused contemnor must be supported by the facts of record surrounding the misbehavior.

From his argument to the Court, it is clear that Mr. Leonard was fully aware, as any experienced trial attorney would be, that in order to reach a determination as to his state of mind, the Court would, and indeed must, take into account all the record facts surrounding the event.  Intent is most often proven by circumstantial evidence – most often consisting of the accused's own acts leading up to the wrongful conduct.  This is an elementary concept even for a novice trial attorney.  Having made his mental state the lynchpin of his defense, Mr. Leonard cannot claim that he was prejudiced by the Court's consideration of his own actions leading up to the commission of the offensive conduct.  Nor does he have any basis for complaining that he is surprised by the specific facts that the Court took into account when they are his own acts, better known to him than anyone else.  Moreover, the facts are uncontested.  The actions Mr. Leonard took and the statements he made during the trial in setting up his closing argument are in the transcript of the trial itself.  Thus, the argument that he is surprised that the Court took these into account in determining his intent when he made his prejudicial closing argument is simply absurd on its face.

Mr. Leonard, his co-counsel during trial, and his lawyer at the contempt proceeding are all experienced attorneys who, between them, have dozens of trials and many years of criminal defense work behind them.  At the very beginning of the contempt proceedings, before any evidence was taken, the Court announced it would take judicial notice of the record of the proceedings, which includes the orders and trial transcript.  This pronouncement ought not to have come as a surprise as any experienced attorney knows that a court can take judicial notice of the proceedings before it, and is all but assured to do so when the basis of the alleged offense occurred during those proceedings.  Indeed, it is inconceivable that Mr. Leonard would expect otherwise, and he clearly did not expect otherwise given his failure to object.  Instead, he and his counsel intentionally and knowingly proceeded with the presentation of their evidence, with no objection or request for a continuance.  The Court notes that Mr. Leonard received such relief prior to the commencement of Mr. Ogoke's trial when he made multiple objections to the government's late disclosures; in response, the Court cancelled the pending trial date and reset it in order to give him additional time to prepare his client's defense.  Thus, not only was Mr. Leonard aware of his rights, but he also had reason to believe that the Court would grant a continuance had he asked for it.  Nevertheless, Mr. Leonard did not object until the Court ruled against him, and even then only after retaining new counsel.

As seasoned trial attorneys, Mr. Leonard and his counsel both were also fully aware of Federal Rule of Criminal Procedure 42, its requirements, and their right to demand strict application of those requirements.  They were clearly aware that the procedure was a summary one, that no independent counsel had been appointed, and that the case had not been transferred to a different judge.  Yet, instead of objecting to the summary procedure, they knowingly and

intelligently waived these rights and elected to continue in summary fashion. Clearly they perceived it to be to their benefit to proceed in this petty offense matter without opposing counsel or a different trier of fact, and to be allowed to present their character evidence by hearsay declarations without objection or cross-examination. It strains credulity to believe that these waivers were not knowingly, intelligently and voluntarily made. [3] The advantages to them of such a proceeding are, of course, obvious. While there was no altering the record of the conduct at issue, the summary procedure allowed Mr. Leonard and his counsel to completely control the presentation of any supplemental evidence the Court would be required to consider. No doubt, they were convinced the evidence would dictate a ruling in their favor, and when it did not, Mr. Leonard hired new counsel and claimed violations of all of the rights he had knowingly, intentionally and intelligently waived. In short, having miscalculated, Mr. Leonard now wants a do over.

In this case, the contemptuous conduct occurred during the defendant's closing argument -- a crucial stage for a defendant in a criminal jury trial. Closing arguments represent counsel's best opportunity to make a lasting impression on the jury before it retires to deliberate. Interrupting an attorney's closing argument is, therefore, a serious matter. When addressing a clear and prejudicial violation of a court order at this stage of the proceedings, the Court was faced with balancing several competing interests that do not exist at any other point in a trial. The government was put at a significant disadvantage by Mr. Leonard's introduction to the jury of a cause for reasonable doubt as powerful as the concept that the prosecution was withholding

---

[3] *See United States v. Patterson*, 219 F.2d 659, 662 n.4 (2d Cir. 1955) (noting that the defendant's contention of inadequate notice in a contempt proceeding was without substance because he was represented by counsel, had every opportunity to cross-examine witnesses, and, significantly, never requested further hearings or extensions of time to prepare a defense).

a crucial witness because his testimony would favor the defense. At that point in the proceedings, a sidebar or removing the jury in order to hold a summary contempt proceeding to ensure no further misconduct would have been appropriate. In short, there was, as *Lowery* requires, a compelling reason for an immediate remedy.

But there was also a countervailing consideration unique to this stage of any jury trial, which is the last and most significant opportunity for the defendant to place his theory of the case before the jury. Instead of interrupting the defendant's closing argument, the Court chose instead to give a very brief curative instruction -- thus not interrupting the flow of defense counsel's presentation -- and inform counsel of the contempt citation immediately after the jury retired to deliberate. This was a reasonable procedure. Indeed, in *Sacher v. United States,* 343 U.S. 1 (1952), the Supreme Court held:

> The Rule in question [then Rule 42(a), now 42(b)] contemplates that occasions may arise when the trial judge must immediately arrest any conduct of such nature that its continuance would break up a trial, so it gives him power to do so summarily. But the petitioners here contend that the Rule not only permits but requires its instant exercise, so that once the emergency has been survived punishment may no longer be summary but can only be administered by the alternative method allowed by [Rule 42 (a)]. We think "summary" as used in this Rule *does not refer to the timing of the action with reference to the offense* but refers to a procedure which dispenses with the formality, delay and digression that would result from the issuance of process, service of complaint and answer, holding hearings, taking evidence, listening to arguments, awaiting briefs, submission of findings, and all that goes with a conventional court trial.

*Id.* at 9 (emphasis added). The *Sacher* Court went on to conclude that although the trial judge did not act immediately in holding the contempt proceedings (as Mr. Leonard claims this court should have done in order to properly invoke Rule 42(b)), the summary nature of the later proceeding was justified by concerns of judicial economy, in and of itself. *Id.* This is because

the policy behind more rigorous adversarial proceedings is to inform courts of events not within their knowledge — a concern that is immaterial where, as here, the Court witnessed *everything* that constituted the contemptuous act. *Id.*; *see also United States v. Griffin*, 84 F.3d 820, 830 (7th Cir. 1996) (citing *Sacher* with approval for the principle that a district judge may defer adjudication of contempt until after trial); *cf. In re Dellinger*, 461 F.2d 389, 393 (7th Cir. 1972) (questioning *Sacher*'s precedential value but on different grounds).

That reasoning is particularly apropos here where not only did concerns of judicial economy come into play (because the prejudicial conduct was wholly before the Court and did not concern a direct or personal attack that would call into question the Court's impartiality), but the special considerations presented by the stage of the proceedings were also apparent. Improprieties during closing arguments place the district court in the difficult position of balancing the need to take immediate action against the likelihood that such action will unfairly punish the client for his counsel's misconduct. Touching on this concern, in a case where a lay person directly insulted the Court during a trial, the Supreme Court noted that "[g]eneralizations are difficult. . . . [since] [i]nstant treatment of contempt where lawyers are involved may greatly prejudice their clients but it may be the only wise course where others are involved." *Mayberry v. Pennsylvania*, 400 U.S. 455, 463 (1971). The procedure the Court followed in this case was reasonably intended to shield the defendant from the consequences of his own attorney's misconduct. It ought not to be the basis for that same attorney to avoid the consequences of his misconduct.

Finally, Mr. Leonard challenges the Court's conclusion that the evidence was sufficient as a matter of law to prove beyond a reasonable doubt that Mr. Leonard violated 18 U.S.C. §

401. Having again reviewed the evidence, this Court's September 17, 2015 order, the relevant authorities, and the arguments made by Mr. Leonard in this regard, the Court finds no basis on which to reconsider its prior ruling. (9/17/15 Order, Dkt. # 214, at 2-9.)

For these reasons, the motion to vacate the Court's September 17, 2015 opinion and order is denied.


**Date**: February 4, 2016  ENTER:

*[signature: Ronald A. Guzmán]*

**RONALD A. GUZMÁN**
**United States District Judge**